# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DENNIS JAY BAILEY,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 3:14-cv-0159-RRB<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS**<br><br>Docket 15 |

## I. INTRODUCTION

Claimant Dennis Jay Bailey filed an application for Disability Insurance Benefits and Supplemental Security Income which Defendant, the Commissioner of Social Security, denied. Bailey has exhausted his administrative remedies and seeks relief from this Court, arguing that the Commissioner's decision that he is not disabled within the meaning of the Social Security Act is not supported by substantial evidence. Bailey seeks a remand for a new administrative hearing. Defendant opposes, arguing the denial of benefits is supported by substantial evidence and free of legal error. Bailey has replied.[1] For the reasons set forth

---

[1] Docket nos. 15, 16, and 17.

below, Bailey's Motion at **Docket 15** is **GRANTED** and this matter is **REMANDED** for further consideration.

## II. STANDARD OF REVIEW

The findings of the Administrative Law Judge ("ALJ") or Commissioner of Social Security regarding any fact shall be conclusive if supported by substantial evidence.[2] A decision to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[3] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[5] In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the Commissioner's conclusion.[6] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[7]

---

[2] *See* 42 U.S.C. § 405(g)(2010).

[3] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)(citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[5] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[6] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[7] *Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).

## III. DETERMINING DISABILITY

The Social Security Act (the "Act") provides for the payment of disability insurance benefits ("DIB") to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[8] In addition, supplemental security income benefits ("SSI") may be available to individuals who are age 65 or over, blind or disabled, but who do not have insured status under the Act.[9] Disability is defined in the Social Security Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[10]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[11]

---

[8] 42 U.S.C. § 423(a) (2011).

[9] 42 U.S.C. § 1381 (2011).

[10] 42 U.S.C. § 423(d)(1)(A) (2011).

[11] 42 U.S.C. § 423(d)(2)(A) (2011).

The Commissioner has established a five-step process for determining disability. Claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five.[12] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity. *The ALJ concluded the Claimant had not engaged in substantial gainful activity since his alleged onset date. Tr. 23.*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities, and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement. *The ALJ concluded that the Claimant has these severe impairments: degenerative disk and joint disease of the cervical spine, chronic obstructive pulmonary disease (COPD), and asthma. The ALJ found that Claimant's alleged left shoulder injury and lumbar spine impairment imposed minimal, if any, limitations on Claimant's abilities. Tr. 23.*

**Step 3.** Determine whether the impairment is the equivalent of a number of listed impairments listed in 20 C.F.R. pt. 404, subpt. P, App. 1 that are so severe as to preclude substantial gainful activity. If the impairment is the equivalent of one of the listed impairments and meets the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.

---

[12] *Id.*

*According to the ALJ, the Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24.*

**Residual Functional Capacity**. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. This RFC assessment is used at both step four and step five.[13] *In evaluating his RFC, the ALJ concluded that Claimant had the RFC to perform light work, with some limitations. Tr. 25.*

**Step 4.** Determine whether the impairment prevents the claimant from performing work performed in the past. At this point the analysis considers the claimant's residual functional capacity and past relevant work. If the claimant can still do his or her past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step. *The ALJ found that Claimant was unable to perform any past relevant work. Tr. 31.*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his or her age, education, and work experience, and in light of the residual functional capacity. If so, the claimant is not disabled. If not, the claimant is considered disabled. *Based on the testimony of the vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Claimant can perform, including Retail Storage Clerk, Flagger, and Assembler of Small Parts. Tr. 32.*

---

[13] 20 C.F.R. §§ 404.1520(a)(4)(2011); §416.920(a)(4) (2011).

## IV. DISCUSSION

The Court finds no error in the ALJ's analysis and findings under Step 1, and Claimant does not contest the ALJ findings under this step. Nor does Claimant complain of error at Step 2 or Step 3. Rather, Claimant complains that the ALJ's determination of the RFC was flawed, that the credibility assessment was unsupported by substantial evidence, and that the ALJ relied on vocational testimony elicited in response to an incomplete hypothetical.[14]

### A. Duty to Develop the Record

The ALJ has a duty to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[15] The ALJ bears this duty even when the claimant is represented by counsel.[16]

Claimant argues that the ALJ failed to develop the record by failing to obtain an opinion from an examining or treating physician, and because the non-examining physician's opinion (Dr. Caldwell) was rendered prior to the completion of the administrative record. Claimant argues more than half of the medical records were obtained after Dr. Caldwell issued his opinion.[17] The Commissioner does not dispute that Dr. Caldwell did not have a complete medical history when rendering his non-examining opinion. The Court

---

[14] Docket 15 at 1.

[15] *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

[16] *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

[17] Docket 15 at 12-14, *citing* Tr. 305-12.

finds that reliance almost entirely on the opinion of a non-examining physician who did not have the benefit of a complete medical history is unfair. Furthermore,

> [m]edical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports. Medical source statements are to be based on the medical sources' records and examination of the individual; i.e., their personal knowledge of the individual.[18]

Here the ALJ had a duty to seek some medical source opinion to inform his decision. "Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."[19] This could be obtained most easily through medical source statements, which are routinely obtained in these matters. At the very least, Dr. Caldwell's opinion should have been fully-informed.

## B. Residual Functional Capacity

Claimant argues that when relying on Dr. Caldwell's opinion in formulating the RFC, the ALJ then failed to adopt the very limitations identified by Dr. Caldwell. Specifically, Dr. Caldwell specifically noted that Claimant is only *occasionally* able to reach overhead, but the ALJ found him capable of *frequent* reaching.[20] In turn, the ALJ's hypothetical presented to the vocational expert allowed for *frequent* reaching, rather than *occasional* reaching. Claimant argues that the ALJ's ultimate determination was accordingly unsupported by substantial evidence because she erred in relying on vocational testimony

---

[18] SSR 96-5p.

[19] Docket 18 at 15, *citing Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993).

[20] Tr. 308, 25.

ORDER REMANDING FOR FURTHER PROCEEDINGS - 7
3:14-cv-0159-RRB

elicited in response to an incomplete or inaccurate hypothetical question.[21] Every job cited by the vocational expert requires frequent reaching. The Commissioner's response is simply that the ALJ's findings regarding Claimant's ability to reach overhead were harmless.[22] But this argument is not responsive to the concern that the hypothetical presented to the vocational expert was flawed. The ALJ gave great weight to Dr. Caldwell's opinion, but then did not articulate why she didn't include Dr. Caldwell's overhead reaching limitations in the hypothetical. Given that the jobs the vocational expert identified all require frequent reaching, this distinction is important, and failure to explain the finding was not harmless.

The Commissioner entirely failed to address Claimant's argument that while the RFC indicates that he "must avoid all exposure to extreme cold and irritants," the DOT job description of "flagger" requires "constant exposure" to weather.[23] Claimant argues that given the extreme environmental limitations in the RFC, Claimant would be precluded from performing the job of flagger. The Court agrees.

The ALJ cannot base her findings on the decision of one non-examining physician but, on the other hand, decline to include certain limitations found by that physician without explanation. This matter must be remanded for an accurate RFC and new vocational expert testimony.

## C. Claimant's Credibility

Claimant requests this matter be remanded for a proper credibility determination. The ALJ found that the Claimant's allegations of chronic shortness of breath were not consistent with the objective medical

---

[21] Docket 15 at 17-18.

[22] Docket 16 at 9-12.

[23] Docket 15 at 18 (citations omitted).

evidence.[24] The ALJ further noted that the Claimant was not compliant with medication recommendations, although she acknowledged that this may have been related to an inability to pay. The ALJ determined that Claimant's pulmonary condition was exacerbated by environmental factors under his own control. She found that the medical records reflect no evidence to support Claimant's allegations of left shoulder weakness, fatigue, sleeplessness, and cramping of hands and feet.[25] The ALJ also found that Claimant's allegations of chronic neck pain, pain radiating to both arms, and right hand weakness and numbness were not wholly consistent with the objective evidence, his treatment providers' observations, and his treatment seeking behavior.[26]

Claimant argues that these credibility findings were not supported by substantial evidence.[27] First, the ALJ rejected Claimant's allegations because the objective medical findings supporting his claims post-dated the alleged onset date.[28] This is true in spite of the ALJ's acknowledgment that "MRI results and later x-ray results reveal significant findings that would appear to support the Claimant's allegations."[29] The ALJ took issue with the fact that the alleged onset date pre-dated these MRI results, and that the medical record

---

[24] Tr. 28.

[25] Tr. 29.

[26] Tr. 27.

[27] Docket 15 at 15-16.

[28] Tr. 28.

[29] *Id.*

reveals "no sudden onset of illness or injury at that time."[30] As discussed below, Claimant testified (and the record supports) that he could not afford medical care. The fact that MRI results which *verify* his physical claims post-date his last date of employment should not negate his claim or reflect poorly on his credibility.

Regarding the finding that Claimant's respiratory distress is a result of environmental factors "within his control," Claimant argues that this credibility finding is "patently absurd, as the ALJ's decision specifically indicates that Plaintiff, an indigent disability claimant, should simply have found another home free of environmental irritants."[31] Claimant has had repeated hospitalizations for respiratory distress, shortness of breath, and low oxygen saturation levels. The Court agrees that a Claimant should not be automatically punished with a negative credibility finding simply for not seeking a different living environment.

The Commissioner notes that the ALJ also found that Claimant stopped working because he was fired, not do to illness or injury, and that prior to his alleged disability onset date, Claimant worked only sporadically.[32] The Commissioner argues that the ALJ reasonably questioned whether Claimant's continuing unemployment was actually due to medical impairments.[33] The Court observes that Claimant did report that he "was fired" on August 31, 2011.[34] However, he explained at the hearing that "I think

---

[30] *Id.*

[31] Docket 15 at 16, *citing* Tr. 29.

[32] Docket 16 at 8, *citing* Tr. 30.

[33] *Id.*

[34] Tr. 209.

the main reason they let me go was because I can't be fitted in a respirator anymore, for one, and I can't keep up." He explained that due to asthma and COPD, he cannot be fitted with a respirator which was necessary for his job. He also testified that he could not perform the physical aspects of the job, and that was why they let him go.[35]

"To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . *unexplained or inadequately explained* failure to seek treatment or to follow a prescribed course of treatment."[36] The fact that Claimant was "fired" and that he failed to follow up on medication and medical recommendations is explained in the record, i.e. he couldn't perform his job due to his limitations, and he didn't have money to seek medical help.

In short, the ALJ's finding that Petitioner lacked credibility is not supported by substantial evidence. Upon remand, the ALJ is directed to make a new credibility finding. As an aside, the Court notes that the Claimant further testified that he can only look down when he bends over, and he cannot look up. He also is clumsy with his right hand, a finding supported by Dr. Caldwell.[37] In the absence of an adverse credibility finding, such testimony would have to be credited.[38] The Court questions whether such limitations would allow Claimant to work as a small parts assembler. This is an issue for the vocational expert to address at a new hearing.

---

[35] Tr. 64.

[36] *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (emphasis added).

[37] Tr. 67-68, 308.

[38] *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)

## V. CONCLUSION

A decision of the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence, or is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Court has carefully reviewed the administrative record, including medical records. The Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant was not supported by substantial evidence, as discussed herein.

## VI. ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that the Claimant's Motion for Summary Judgment at **Docket 15** is **GRANTED** and this matter is **REMANDED** for further proceedings consistent with this opinion, including a *de novo* hearing and decision, including new vocational expert testimony.

**IT IS SO ORDERED** this 18th day of May, 2015.

                                           S/RALPH R. BEISTLINE
                                           UNITED STATES DISTRICT JUDGE